Good morning, Your Honors, and may it please the Court. My name is Erin Earle. I'm with the law firm of Perkins Coie, and I'm pro bono counsel for Plaintiff Appellant Jody Carr. Professor Michael Teeter, who authored the briefs, had an unavoidable conflict arise, which is why I am appearing on behalf of Mr. Carr at argument today. I'll aim to reserve around three minutes for rebuttal. In 2010, the investigation into Mr. Carr's grievances in civil litigation over a false escapee notation in his file resulted in a correctional officer being fired. Since that time, Mr. Carr has been subjected to a series of retaliatory actions taken by other correctional officials, officers, including threats of violence, false prison system, including its maximum security institution, failing to be provided the required protective custody reviews, and most egregiously, having his food contaminated, leaving him to contract C. diff, leaving him at risk of death, and seriously and violently ill for months. The district court nonetheless granted summary judgment in favor of defendants. Mr. That summary judgment on appeal. Let me see if I can focus you down and tell you my understanding of the case and where my focus is. And you tell me if I'm wrong. Same thing to the other side. My understanding is that the prisoner in this case filed a pro se complaint, correct? He did. And then the defendants answered. He did. They did. Within the time permitted to file an amended complaint, Mr. Carr filed an amended complaint. He did. And he didn't that did not require leave of court. Our understanding is that the PLRA has a screening requirement for complaints filed. Under ordinary circumstances, that does not require leave of court. Within 21 days of the time someone answers under the federal civil procedure, you can file an amended complaint without leave of court, which is what he did. Yes. And my understanding is this was assigned to a magistrate judge, correct? Yes. With the consent of the parties, the magistrate judge took a look at the amended complaint and said, well, there is one claim in the new amended complaint that is colorable, but I'm still going to throw the whole thing out. Is that what happened? The magistrate judge held that the amended complaint was colorable, but the magistrate judge granted summary judgment. And so that's why he threw the whole thing out. He said that there was He did recognize that he had a he did have a cognizable claim against a new defendant. He did. And he and he said that Mr. Carr could bring that in a separate in a separate complaint. Is the cognizable claim the one involving contamination? It was it was not the new the new cognizable claim was one against a sergeant for allegedly for basically filing false disciplinary reports against him in retaliation for his exercise of litigation rights when he sent settlement letters to the defendants in this in this case. I can't thank you. So if you go to the substantive claims. Right. And the first one is an Eighth Amendment claim, I believe, involving he he had like three defendants. Yes. I mean, where the other Hart Hartnett Hartnett and Davidson Davis. So with respect to that, the first thing that the district court does is says, well, it's barred because you didn't exhaust administrative remedies. That's correct. And you come back and you say, well, there's he did. In fact, if you look at these two incident dates, one in November and one in March, I believe it is correct. That's correct. And if you look at in March, when he learned that he had contracted this bug, whatever it's called. Right. Then and he filed the what do you call concern form? He did on March 28th. Then he did file agreements. And that's confirmed later by one on in April. That's correct. Right. The district court said, no, no, no, no. The real the real key is when he first learned that he had been disputed, been spoiled with. Right. Which was back in November. Right. And he didn't file agreements at that time. That's correct. He did not file it. And you come back to that. You say, well, he didn't do it because he was afraid of retaliation or because he was too sick. That's right. The remedies were effectively unavailable to him between. It seems like the if you're right about the incident, that surely is a much easier way at getting at that issue. Isn't that correct? That's correct. And why is that? Why is that the critical point? Why is that the incident that we should evaluate whether or not he exhausted when he was when he was when he was diagnosed with CEDA? Yes. Why? Why the March 20, 15th date or whatever that was? Well, first, proper exhaustion. Woodford Council's is determined by the prison's own policies and the policies do not provide any guidance on what the incident is that the that the prisoner must file a grievance within 30 days of. And here, you know, in November, what he was told was he was told by a correctional officer who wanted to remain anonymous that, you know, defendants had been contaminating his food and then he became sick. And but it was it was in March 16th when he saw the doctor that he was able to make the critical link between his being sick and the information he had been provided by the correctional officer. And I think on this point, respondents point out that Mr. Carr has filed a food contamination claim before in litigation beginning in 2006. And one of the reasons that his food contamination claim was dismissed before was because he failed to point to medical evidence showing that he had been treated for food contaminated related illness. And based on that, it's completely it was it was it was when he received that diagnosis that Mr. Carr had enough information to make a specific concern form related to the incident that had the the incident that he was complaining about. So so he filed E.R. 56 on March 28th, 2012. And then even and so we submit that the record is not clear as to whether that was treated by the prison system as either a step two of the grievance process or step one of the grievance process. And so that's a genuine question. So the genuine dispute of material facts for the district court to resolve at an evidentiary hearing on remand as to whether he exhausted his claims and as to whether the administrative remedies were effectively unavailable to him. Because and then even if it is treated as step one of the grievance process in April on April 27th, 2012, he filed what was indisputable. He attempted to file a step two grievance raising the same claim. It seems like if you're right, if the critical incident is the one in March, then that ends that that seems to me he exhausted. He filed he filed his concern form and that's verified by the or validated by the April. And we completely agree. It appears if that's not the critical date, then then you have to look at whether or not he has raised a sufficient claim of medical inability, physically unable to because he was sick, whether he was afraid of retaliation, which, you know, there's a different way of analyzing it. Right. That's correct. And we think that the district court should hold that and should find it an evidentiary hearing that he did exhaust his claims that March 16th is the relevant date that he did exhaust his claims and then remain for have further proceedings on the merits. But respondents have argued that what he filed on March 28th was not actually proper exhaustion. And so that is why if the court were to agree with respondents on that matter, we would nonetheless Mr. Carr would nonetheless be able to reach the merits of his claims because he had submitted sufficient evidence that administrative remedies aside from the ones that he did exhaust were effectively unavailable to him. Well, the district court went on and reached the merits. Correct. Not as to his food contamination claims. It decided his retaliate his retaliatory transfers claim on the merits. And it held that Sergeant Higgins was entitled to qualified immunity against his due process claims for being held in protective custody and restricted housing. He wanted to be held in restricted custody. Isn't that correct? He he's he protected custody wherever he initially requested to be placed in and rightfully so. He participated in proceedings testifying against gang members in the prison. Absolutely. And so but his his claim was that after he was placed there and he sought he sought to have the protective custody hearings to which he was entitled under the prison zone policies. And as to the the district court reached the merits of his retaliation claims, but it did not reach the merits of his food contamination claims. Counsel, I have a question for you on the food contamination claims. The type of illness that he had. I could be wrong, but I assume it in most cases is caused by lack of hygiene. By either the person who gets the illness or some nurse or caregiver who's handling both feeding them and something relating to their excrement in most cases. So I would sort of question whether that claims a plausible claim ordinarily. But here I understand from the briefs that the officer, one of the prison guards is allegedly or purportedly has said that that the food was contaminated. Can you help me on the record there? That's correct. So on the correctional officer that defendant Fleming had contaminated his food. And there's also he also submitted an affidavit saying that officer Fleming told him, Mr. Carr, that she had done this. And there is a final affidavit from another inmate who testified that officer Fleming told this other ER 94 is the affidavit of the other inmate. And then Mr. Carr's testimony is at ER 98 to 99. Counsel, did you want to reserve some time for rebuttal? I'll reserve the remainder of my time for rebuttal. All right. Thank you. Then we have counsel Andrew Brassie. Is that correct? Thank you. For Idaho. Justice Gould, may it please the court. Counsel, I'm Andy Brassie from Brassie, Crawford & Boise. And I guess I'll focus in on a couple of the questions that were asked here. Justice Hawkins first. As someone once said, there's no justice at the Ninth Circuit. We're all judges. We would love the elevation, but we're probably out of time. So let me just talk about the motion to amend briefly. You had raised a question, and I don't think anybody briefed the answer to this. And that is, well, there's a verified prisoner complaint filed. We filed an answer on behalf of our clients. And then sometime later, a motion to amend, plus an amended verified complaint was filed. It seems to us that you need to look at Prison Litigation Reform Act, which requires a review when Judge Bush, in this case, did the initial review. One of the things that that review order says that ER 344 plaintiff may not proceed on any other claims at this time. So it's our view that before he can proceed on that, particularly in this case where there were other claims against other individuals who weren't defendants in this case, that that needs to go through that vetting process of the review, just as the initial complaint did, which was not done in this case. What then happened, which seems to us is important, there were a number of motions filed and a number of things that were filed, as the what happened was that Mr. Carr filed a motion for partial summary judgment. And quite frankly, we felt compelled to respond, which we did. And interestingly, although the opening brief indicates that ought to be treated as a motion for default, not a motion for partial summary judgment, what as to the original complaint. So, Judge, I'm not, I'm not sure where you want me to head or you are headed with that. But I just want to explain how that happened. And Justice Pius, I wanted to respond. This is an interesting case in terms of the exhaustion issue. But I think I don't think there's any disagreement as to law on exhaustion. And that is under the Prison Litigation Reform Act's mandatory court and, and counsel presented the court with the Ross v. Blake Supreme Court case that was decided in 2016. I think it's clear Supreme Court wants to take away the discretion, take away special circumstances, and there were some in that case. Then there has to be the availability of the process. Well, in this case, if you look, and when we look at the record and it's SER 00081 and 82, there's no contention, I don't believe, that Mr. Carr doesn't understand the process. Oh, no, I think that's pretty clear. He seems to be a fairly, how would you say, grievance-friendly inmate. I think that would be a good description. He's got a track record. There's no question about it. So, the other thing I wanted to be clear on, under the law, and again, I don't think there's a disagreement, the court gives deference to the prison requirements. And the itself say, okay, here, here's the process you have to go through. So, in Idaho, it's, you file a concern form, there's supposed to be a response within seven days. If you don't get a response, sometimes there's not, then you have to file a grievance within 30 days of the incident, and then there's the right to appeal. Now, what, as I read Judge Bush's decision, and he didn't reach the merits on it, it was just for failure to exhaust, when Mr. Carr filed his verified complaint, the original complaint, that was filed, I believe, on August 29, 2013, he said a number of things. But one of the things he said was that he was told on November 19, 2011, that between these dates, he was fed human feces, and he went further about how Officer Fleming had to go outside to the porta potty, come back in, presumably through security, with this cup, and place it in his food, and he also indicated he'd been eating it for two days. Well, when he filed his motion, and we felt compelled to file our own, we proved, not only did that not happen, because she didn't do it, not only did she deny it, but the proof was, she wasn't making food, she wasn't delivering food, nor was she there when these events allegedly occurred. And so then, the response was, when Mr. Carr responded to our dispositive motion, he said, well, I really didn't learn about it until April 15, 2012, after I was transferred to Boise, and I had an outside visit with an outside physician, somebody outside of the institution, and here's what he said. In his disputed facts, he changed his story again and said, well, no, when I really learned about it was March 16, 2012, when I was still at the facility in Orofino, Idaho, which is fairly far north Idaho. Then, in March of 2012, on two occasions, the attorney general himself, the deputy attorney general, handling these matters, indicating what had happened. And then, on March 28, he filed a concern form, but he didn't follow it up with a grievance until April. Now, we don't have a record of that, and the record, now, I'm not going to sit here and tell this court that mistakes can't be made and things can't be lost, but we keep a record, and that's right. If you, under the best case scenario, if you say, even though he's told us he knew about it, and even though he's changed his story on a number of occasions, if you just assume March is the date, he still doesn't follow our procedure, which, as I understand it, why Judge Bush said, you didn't exhaust your remedies, because he didn't file a grievance within 30 days of the incident. Clearly, on March 17, 2012, when he wrote the deputy attorney general, he knew the circumstances. He said it in his letter. And so, our position is, to exhaust is mandatory. He didn't exhaust in this case, and we think the court was right. So, in your view, the incident, he knew that the incident happened in October. End of story. He should have grieved. Well, he knew the incident happened, he said in his complaint, he swore in his complaint, he knew about it in November. But, Judge Beheis, let's just say, for whatever reason, we're going to give him the benefit of the doubt. Maybe he's sick, maybe he can't figure this out. That's why we give him to March, but if we give him to March, Judge, he still doesn't meet our requirements. He's still late, and those his finding, that as to Fleming, Hartnett, and Davidson, on the Eighth Amendment claims they fail, we've also briefed bluntly that on the merits, if this court were to decide, well, we think he did exhaust, or for some reason, we're going to let him go forward, we've also set forth in our briefing why we think it fails on the merits. Now, I understand. Right. That's why we have trials, etc., Judge, but when you look at the facts of this case and what he's pled, every time, bluntly, the defendants proved one thing, the story changed. So, and as to Hartnett and Davidson, in any event, there was no exhaustion, but there were certainly no acts on their part on the merits. On the conditions of confinement, it's again an interesting issue in this case because Mr. Carr sought and was granted protective custody, and I don't think the record reflects that he didn't want to be in protective custody. I think what the record reflects is that he didn't like where he was being housed. He wanted to be someplace else that was not quite as comfortable. Right. And I get that. We understand that. But it's not his right. And so that's why we believe Judge Bush was right when he indicated that with regard to, and he used the Brown case, which obviously this Court is familiar with, there wasn't no clearly established law as it regards protective custody inmates and what due process they must be afforded when that status, if you will, is not contested. And Mr. Carr is not here telling you he's contesting that. And so when you look in the record and you look at when he was moved, there are notations, although not a hearing, about why he's being moved and his protective custody status. So with regard to that issue of confinement and his 14th Amendment allegation, we believe that likewise should be affirmed. The last thing was the retaliation under the 14th Amendment of being moved to a variety of locations. And I won't, I'm not going to walk the Court through every location, but that claim was made against Sergeant Higgins, and we believe the proof is clear that although Sergeant Higgins can make recommendations and the Court so found, Sergeant Higgins has no authority and no control to confirm where Mr. Carr or for that matter any other inmate under his charge goes. And so Judge Bush in that particular matter decided that claim on the merits. How did you deal with it with respect to Ms. Officer Fleming? She's looped into the retaliation claim as well. Fleming? She's not looped. She is as it regards the feces, Judge, but not the confinement. Right. And I'll try to answer your question. I'm not sure I know exactly what you're looking for, but that claim is that he was told by an unknown officer, as we all know, and I deposed him and by that time he'd forgotten. I don't mean to be flip. We don't know who it was. We have no idea. But the story went from, well, it was her that did it and went through the scenario how she brought this back in. When we proved that she wasn't there, didn't prepare food, didn't deliver food, then Mr. Carr's story changes. So with regard to Officer Fleming, Judge Pius, not only did he not exhaust, we think on the merits that's simply not a credible case. I'm happy to answer any other questions you have with that. Your Honor, we respectfully request that this court affirm the decisions and the judgment of the district court. I appreciate the opportunity to be here on a somewhat historic day. Thank you. Mr. Brassi, thanks for your argument and attempt to elevate us to justices. I appreciate it. Thank you, Judge Eagle. Okay. Ms. Earle. Thank you. As to the exhaustion issue, Mr. Brassi represents that he would have been untimely, even if you do consider the April 27, 2012 grievance. The problem with that is that it ignores the medical record showing that in early April, Mr. Carr had a relapse in his disease. It had been responding to antibiotics, but his symptoms recurred, and he was actually transferred to another prison for emergency medical treatment. And you can see that in the record at ER 166 to 167, as well as ER 266. It's the transfer for medical care and also the intake and outtake forms. In terms of the merits of the food contamination claims, the evidence showed Officer Fleming's shift schedule, but it didn't say that there is no way that she could have been there. And as a result, we think there's a genuine dispute of material facts as to that question. Whether or not defendants or the district court felt that claim was credible, it is still sufficient to survive summary judgment. On the due process claims, Mr. Carr was given very conflicting information about why he was being held in segregation. It is absolutely clear from the record that Mr. Carr did not want to be in segregation, and he was first told that it was because of his medical condition, but the medical quarantine had been lifted several months before, and so he continued to pursue. Then he was told it was a security hold, and then only after he was told it was a security hold was he told that it was a protective custody issue. And so his failure to explicitly challenge the protective custody designation... He had wanted protective custody. He did. He asked for it. He did, he did. But when he was... He wanted to be in protective custody in a different facility. Well, he wanted to have a hearing about why he was being held in segregation. Because he wanted to be in a different facility. So, you know, the basis of his claim is that he was failed to be provided the hearings that he was entitled to. Understood. And then lastly, on the retaliatory transfers claim, Mr. Brassi represented that Sergeant Higgins didn't have the authority to transfer Mr. Carr, but Mr. Carr's amended complaint sought to add deputy warden and the warden of the facility who did have authority to transfer him. And so to the extent the court, this court, relies on Sergeant Higgins' authority, we would request that... One minor question. Was Fleming part of the retaliation claim? Fleming is... Mr. Carr's briefing is a little confusing. He definitely, I think, asserts facts that would suffice to show retaliation by Officer Fleming, not only for the food contamination, but also for the prior disciplinary report incident. But his briefing is not entirely clear. But our position is that it is a part of his retaliation claim. Your Honor, for these reasons, we would request that this court vacate the grant of summary judgment and remand for further proceedings. Okay. Thank you. We thank you for your argument. Mr. Brassi's case is now submitted, and both our more local counsel do a fine job, just like those Washington, D.C., counsel. Thank you.
judges: Hawkins, Gould, Paez